UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION FOR A WARRANT AUTHORIZING THE INSTALLATION AND MONITORING OF A TRACKING DEVICE IN OR ON A 2007 WHITE FORD EDGE, NEW HAMPSHIRE REGISTRATION � 4260 | Case No.  19-mj-38-01-DL |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A TRACKING WARRANT**

I, Alcohol, Tobacco, Firearms, and Explosives (ATF) Task Force Officer Eric Joyal, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.  I also am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.  I make this affidavit, pursuant to Federal Rule of Criminal Procedure 41, and Title 18, United States Code, Section 3117, in support of an application for a Tracking warrant authorizing the installation and use of a tracking device, for a forty-five (45) day period, on a 2007 White Ford Edge with New Hampshire Registration �a 4260, registered to Maria Rivas-Barraza, of ▬▬▬▬ Manchester, New Hampshire, and operated by Guillermo Garcia Esquivel (▬▬/82), of ▬▬ Hall Street, Manchester, New Hampshire ("the target vehicle").

2.      That, I am a Police Officer with the City of Manchester.  I have been so employed since November of 2010. In April of 2011, I successfully completed The New Hampshire Police Academy and obtained my certification as a full time police officer.  Soon after, I was assigned to the Patrol Division of the Manchester Police Department. Some of my duties while assigned to the Patrol Division included basic patrol duties, report writing, interviewing of witnesses and suspects, evidence collection, and processing.

3.      In January of 2015 I became a member of the Manchester SWAT Team.  During my time on the SWAT Team I have participated in numerous raids and apprehensions in the execution of drug and firearm related search warrants. I have received specialized training in the detection and investigation of illicit drug trafficking, gang, and other criminal activity.

4.      In In August of 2018, I was assigned as a Detective with the Special Enforcement Division – Alcohol, Tobacco, Firearms and Explosives ("ATF") Task Force.  I have been involved in investigations relating to offenses involving the unauthorized use and possession of firearms, including prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g), making a material false statement in connection with the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).   I have also been involved in investigations relating to the possession with intent to distribute controlled drugs, in violation of 21 U.S.C. 841(a)(1). Throughout the course of my career, I have acted as the control agent on multiple confidential informant controlled drug/firearm buys.  During these investigations, I have interviewed drug traffickers, confidential informants, and other violent offenders regarding their unlawful activities and their means to avoid detection by law enforcement officials.

5.     The factual basis for the issuance of a Tracking Warrant, as set forth below, is based upon my training and experience, my personal knowledge, observations and beliefs, and information provided by other law enforcement officers and officials, and the training and experience of other law enforcement officials assigned or assisting with this investigation.

6.     Based upon my training, experience, and involvement in prior investigations, I know that individuals who participate in armed robberies often use vehicles in order to quickly flee the area after the robbery has occurred.  In addition, those same vehicles are often used to scout out the location of a potential future robbery.  Individuals who are involved in armed robberies are highly cognizant of the presence of law enforcement and often engage in counter-surveillance maneuvers while traveling in a motor vehicle. This causes it to be difficult for law enforcement to effectively conduct surveillance. The presence of a tracking device on a motor vehicle that is used for transporting individuals engaging in armed robberies allows law enforcement to track the movement of a vehicle effectively while decreasing the chance of detection.

7.     In preparation for writing this affidavit, I reviewed reports prepared by other investigators regarding witness interviews, surveillance, and other investigative efforts regarding this investigation.  In addition, I have discussed this investigation with other officers involved in the case.  Through my conversations with other officers and my analysis of reports prepared by other officers, I am familiar with all aspects of this investigation.  The information contained in this affidavit is submitted for the sole purpose of supplying probable cause for the issuance of an order authorizing the government, at any hour of the day or night to install, monitor, maintain, and remove a mobile tracking device, which transmits an electronic signal that can be used to detect the movement and location of the above described target vehicle, and make surreptitious

entry into the vehicle at any hour of the day or night to install the mobile tracking device, maintain the mobile tracking device, or remove the mobile tracking device. While this affidavit contains all the material information I am aware of that is pertinent to the requested Tracking warrant, it does not set forth all of my knowledge about this matter.

8.      Based on the facts set forth in this affidavit, I submit that there is probable cause that violations of Title 18, United States Code, Section 1951 (Interference with Commerce by Threats or Violence) have been committed, are being committed, and will be committed by Guillermo Garcia Esquivel. I submit further that there is probable cause that Esquivel uses the target vehicle in furtherance of the aforementioned criminal violations. Accordingly, I believe that the installation of a tracking device on the target vehicle and the use of the tracking device for a forty-five (45) day period will lead to evidence, fruits, and instrumentalities of the aforementioned crimes.

## PROBABLE CAUSE

9.      Between January 5, 2019, and February 24, 2019, there have been seven reported convenience store robberies in Manchester, NH, that, based on the investigation described below, appear to have been committed by the same individual.  In all seven incidents, the suspect has been armed with a handgun and in all incidents has been described similarly by witnesses.  In addition, video reviewed from the incidents showed that the suspect has been the same person to include matching clothing, weapon, and mannerisms.  Through my training and experience I know that individuals engaged in violent crime sprees will continue to take more risks increasing the propensity for violence unless stopped by an intervening event, like an arrest.  Individuals engaged in an armed robbery crime spree will typically continue their pattern of robbing stores until caught by law enforcement.

4

### *January 5, 2019, Shop N Go Robbery*

10.     On the evening of January 5, 2019, the cashier of Shop N Go, 188 Massabesic Street Manchester, NH, informed law enforcement of an armed robbery of the store.   The cashier reported that a male entered the store and immediately pointed a black handgun at him. The offender then went behind the counter and said "give me all the money" as he continued to point the handgun at the cashier. The offender also brandished what was described as being a 12" black fixed blade knife with a silver blade.  The offender demanded that the cashier place all the money from the cash register in a plastic bag.  The offender then demanded that the cashier open the ATM, but the cashier did not have access to the ATM.  The offender also demanded that the cashier provide him with money from a locked cabinet. From video, it appears that the offender fled on foot in a south east direction on Massabesic Street.   The cashier and the offender were the only two people in the store for the duration of the robbery.  The cashier described the offender as a white male, approximately 5" 10", skinny build, between 20 and 30 years old, with a black mask, a dark hooded sweatshirt, and dark pants.

11.     An investigator reviewed video footage of the robbery and noted the offender removed the gun, a black revolver pistol, from his waist band, and the knife from his left pocket. He held the gun with his right hand and the knife with his left hand during the course of the incident.  The offender held the cashier at gunpoint for the duration of the incident. The offender was pointing and instructing the cashier what to do throughout the course of the robbery. There was approximately $690.00 stolen during the robbery.

### *January 15, 2019, Shawn's Corner Market Robbery*

12.     On the evening of January 15, 2019 an officer was dispatched to Shawn's Corner Market, 912 Somerville Street Manchester, NH, regarding a panic alarm. It was later determined

that this incident was an armed robbery. When the officer arrived on scene the clerk reported that

a male entered the store and pointed a pistol at him. The male was yelling "I need money!" and

"Open the boxes!" The clerk reported that the male had a pistol in his left hand and a knife in his

right hand. He described the male as a white male, between 5'8" and 5' 10", wearing a black

jacket, black mask, black gloves, and black beanie hat.  The clerk estimated that the male stole

an estimated $2,000.00.

13.     An investigator reviewed footage of the robbery and noted that the male walked

through the front door of the business and displayed a black revolver from his waist band using

his right hand and pointed it at the clerk.  The offender was pointing and instructing the clerk

what to do throughout the course of the robbery. The investigator noted that the offender was

wearing a black hooded sweatshirt in an up position, a black mask, blue jeans, gray boots or

sneakers, and was not wearing gloves.

### January 26, 2019, Shawn's Corner Market Robbery

14.     On the evening of January 26, 2019 an officer responded to Shawn's Corner

Market, 912 Somerville Street Manchester, NH for a reported armed robbery.  Upon arrival, he

spoke the cashier when the robbery occurred.  The cashier reported that a white male wearing a

black hooded jacket and black pants with a cloth mask covering everything but his eyes entered

the store and immediately pointed a handgun at him.  The cashier did not think the male was

wearing gloves.  The cashier estimated that more than $1,000 was stolen during the robbery.

There was no video evidence in this case due to a malfunction with the system.

### February 2, 2019, Shawn's Corner Market Robbery

15.     On the evening of February 2, 2019, officers were dispatched to Shawn's Corner

Market, 912 Somerville Street Manchester, NH, regarding a panic alarm that was later confirmed

to be an armed robbery.  Upon arrival to the location, units were advised that a suspect entered the store armed with a handgun and stole an unknown amount of US Currency.  Responding officers spoke with the clerk, and reviewed surveillance footage of the incident.

16.     The footage shows a white or Hispanic male suspect, standing approximately 5'9"-6'1" in height, weighing approximately 160-200 pounds, wearing a black hooded sweatshirt, blue jeans, gray sneakers, and a black mask.  The male suspect was armed with a revolver style handgun.  The suspect presented the firearm, pointed it at the clerk, and demanded money.  Approximately $500-$600 was stolen.

### *February 8, 2019, Shop N Go Robbery*

17.     On the evening of February 8, 2019 an officer responded to 188 Massabesic Street Manchester, NH, the Shop N Go convenience store regarding an armed robbery call for service. Upon arrival he spoke with an individual who was working during the time of the robbery. The individual gave a description of the suspect as an unknown race male, unknown age, 5'4", black jacket, jeans, wearing a black mask over his face, and armed with a black handgun.  The victim explained that the store was empty of customers when a male walked through the front door and stated "give me all your fucking money."  The offender demanded both the money in the register and in a cabinet next to the register.   The individual described the offender as male approximately 5'4", medium build, wearing a gray hooded sweatshirt, blue jeans, and a black ski mask opened at the eyes only.

18.     Review of the video surveillance footage from the incident revealed that the offender was a white male, carrying a black revolver with his right hand, wearing a dark charcoal gray sweatshirt with hood up, with a black mask covering his face (only eyes can be seen), blue jeans, and gray sneakers or boots.  The offender was not wearing gloves.  The offender pointed a

firearm at the individual throughout the robbery, and was pointing and instructing the clerk what to do throughout the course of the robbery.

### *February 15, 2019, 61 Best Market Robbery*

19.     On February 15, 2019, officers were dispatched to the 61 Best Market, 61 Maple Street Manchester, NH, for a reported armed robbery. Upon arrival at the store, officers spoke with the clerk that was working during the robbery and reviewed the surveillance footage.  Based upon surveillance footage, the offender appeared to be a white male wearing a charcoal gray hooted sweatshirt with hood up, blue jeans, a black face mask, and light gray footwear (boots or shoes).  The offender pulled a firearm from his waist band and raised it as he walked to the front of the counter.  Throughout the robbery the offender was pointing the revolver at the clerk and appeared to be giving the clerk instruction by talking and pointing.  The clerk described the gun as a black gun with six bullets and stated that he could see into the cylinder. The gun that he described is consistent with a revolver and was confirmed by the surveillance footage.  The clerk estimated that between $700 and $1,200 was stolen, depending on how sales were for the day.

20.     Officers searched the area for additional cameras and located cameras at Guillermo's Auto Repair at 91 Maple St Manchester, NH.  The cameras located faced Oliver Street/Dix Street, which is approximately 1 block north from 61 Best Market.  In reviewing footage, officers observed a white 4-door SUV park on Oliver St, in vicinity of 22 Oliver St located near Dix Street, around the time of the robbery.  The video shows that, just before the robbery, an occupant exits the driver side of the vehicle and walks towards the direction of the store. A few minutes later, the subject returns at a fast walk to the vehicle and drives from the area, heading north on Oliver Street.  The vehicle appears to be a white Ford Edge SUV.

21.     During the course of this investigation, a detective reviewed video taken from 61 Best Market on February 15, 2019.  The video showed a Hispanic male with black hair, later identified as Guillermo Garcia Esquivel, purchase a beverage, and then leave the store and enter the driver's side of a white Ford Edge.  Approximately 10 minutes later, the store was robbed

### *February 24, 2019, 61 Best Market Robbery*

22.     On the evening of February 24, 2019, officers were dispatched to 61 Best Market, 61 Maple St Manchester, NH, in response to a panic alarm which was later determined to be an armed robbery.  Upon arrival, officers spoke to the clerk who reported that a male, wearing a dark patterned hoodie, jeans, a black mask, and gray sneakers, pointed a gun at him and robbed the store.  Officers and detectives on scene were able to briefly review store video and observed the suspect to be darker skinned, possibly Hispanic with black hair.

23.     Additional officers responded to the scene and conducted a motor vehicle stop of NH REG ▓ 4260, being a 2007 White Ford Edge (the target vehicle), registered to a Maria Rivas-Barraza, in the area, which had a defective brake light.  Both running lights on the target vehicle were functioning properly and that only the driver's side brake light was not operational.  Officers had the driver exit and he was identified as a Guillermo Garcia Esquivel.  Esquivel denied being involved in the robbery and was released.

24.     Officers compared images of the Hispanic male in 61 Best Market on February 15, 2019 to Esquivel, and it appears they are the same person.  In addition, images of the white SUV from 61 Best Market on February 15, 2019 appears to be the target vehicle.

25.     Officers compared images of the suspect in the 61 Best Market on February 24, 2019, to Esquival, and it appears they are the same person.

26.     The target vehicle also appears on the February 24, 2019 surveillance video from 61 Best Market shortly before the robbery occurred.  An officer reviewed the surveillance and observed the target vehicle traveling north on Maple Street approximately 12 minutes before the robbery.  The target vehicle turned east on Dix Street.  Approximately three minutes later, the target vehicle appears on the video traveling north on Maple Street again.  The vehicle is next seen driving west on Dix Street.  Video surveillance footage from a Howe Street[1] address on this same date also shows the Target Vehicle travel past the residence three separate times during seven minutes.  This activity is common with someone conducting surveillance of a location to determine the right time to conduct a robbery and determining whether the location is being watched by law enforcement.

27.     An officer also reviewed video footage from Alpha and Omega Towing, 37 Maple Street, down the street from 61 Best Market.  On the video and after the robbery, the officer observed a white Ford SUV, resembling a Ford Edge, driving north on Maple Street before beginning to slow.  As the vehicle slows down, the driver's side rear brake light did not turn on.   This matched the target vehicle Esquivel had been driving.

28.     On February 25, 2019, two detectives spoke to a man who claimed to have seen a suspicious white SUV in the area of 61 Best Market during the time of the robbery.  The witness said he was leaving the store during the evening when he saw a white Ford SUV circling the block, heading north on Maple Street before turning.  The witness said he saw the same SUV parked on Howe Street and then saw it drive back on Maple Street and circle the block.  The

---

[1] Maple Street is a one way street, and 61 Best Market is on Maple Street between Dix Street and Howe Street, closer to Dix Street.  To circle 61 Best Market, a driver could drive north on Maple Street, turn right on Dix Street, turn right on Lincoln Street (which runs parallel to Maple Street), turn right on Howe Street, and the right on Maple Street again.  The camera from the Howe Street residence is on Howe Street between Lincoln Street and Maple Street.

witness then said he saw the vehicle return to Howe Street driving at a high rate of speed before turning north on Lincoln Street. The witness stated that police responded to 61 Best Market approximately 4 minutes after the SUV left the area. The witness was shown a photograph of the target vehicle taken from security cameras and the witness immediately said that was the same SUV he had seen.

### *Attempted Physical Surveillance of Esquival*

29.     Officers have attempted to conduct surveillance of Esquival. Investigators have identified Esquival's primary residence, ▮▮▮ Hall Street, Manchester, NH. The building is a multi-family building, and Esquival appears to reside in the first floor with an adult female and children. Based upon surveillance, the target vehicle appears to be the only vehicle Esquival has access to. Officers have observed both Esquival and the female driving the target vehicle.

30.     On February 28, 2019, investigators attempted to conduct physical surveillance of Esquival driving the target vehicle. Esquival conducted multiple maneuvers indicative of counter surveillance measures. These maneuvers included last-second turns and U-turns for no apparent reason. Esquival's counter-surveillance measures make it difficult for law enforcement officers to effectively conduct surveillance. The presence of a tracking device on a motor vehicle being utilized for the multiple armed robberies is beneficial because it allows law enforcement to track the movement of the vehicle effectively and to decrease the chance of detection.

31.     In all seven incidents, the suspect has been described as a male, wearing a dark patterned hoodie, blue jeans, and gray type shoes. In addition, the suspect has been armed with a black revolver type handgun in each robbery. In all incidents, the mannerisms of the suspect have been the same. In addition, the target vehicle has been seen in the area of 61 Best Market

before and after the February 15, 2019, robbery, and immediately after the February 24, 2019,

robbery.   The investigation has revealed that the target vehicle has been used in at least two of

the robberies in order to quickly flee the area after the robbery has occurred, and was used on at

least one occasion to scout out the location of a potential future robbery.  Accordingly, I believe

that there is probable cause to believe that the installation and use of a tracking device on the

Target Vehicle for a 45 day period, will lead to evidence, fruits and instrumentalities of the

aforementioned crimes as well as Esquival's involvement in Manchester armed robberies.

### INSTALLATION AND MONITORING OF THE TRACKING DEVICE

32.     I make this affidavit in support of an application for a Tracking warrant

authorizing the installation and use of a tracking device for a forty-five (45) day period, in or on

the target vehicle. In addition, because individuals who are involved in armed robberies are

keenly aware of the presence of law enforcement, I believe that if law enforcement officers were

required to place the tracking device on the motor vehicle during the hours of 6:00 A.M. and

10:00 P.M., the targets of the investigation would likely observe the activity of law enforcement.

Therefore, because there is reasonable cause to believe that the installation of the tracking device

during the daytime hours of 6:00 A.M. – 10:00 P.M. would result in the target's discovery of the

presence of law enforcement actions, it is hereby requested that this Court allow law

enforcement to install the tracking device at any time in the day or night.

33.     In the event the Court grants this application, there will be periodic monitoring of

the tracking device during both daytime and nighttime hours for a period of forty-five (45) days

following installation of the device. Because Esquivel or others may sometimes park the target

vehicle on private property, it may be necessary to enter onto private property and/or move the

target vehicle in order to effect the installation, repair, replacement, and removal of the tracking

devices. The tracking devices may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## REQUEST FOR SEALING

34.     It is requested that the warrant and accompanying affidavit and application in support thereof, as they pertain to an ongoing investigation, be sealed in order to avoid premature disclosure of the investigation, guard against the flight of fugitives, and better ensure the safety of agents and others. The disclosure of the United States' request for a Tracking warrant and the disclosure of the issuance of a Tracking warrant would compromise the ongoing criminal investigation by allowing co-conspirators to flee, conceal their unlawful conduct by tampering with evidence, and/or notify fellow co-conspirators of the existence of a criminal investigation.

## REQUEST FOR DELAYED NOTIFICATION

35.     It is requested, pursuant to Title 18, United States Code, Section 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize a delay in notification, involving the execution of the warrant, for a period of thirty (30) days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause, as detailed herein, to believe that providing immediate notification would seriously jeopardize the investigation.

## CONCLUSION

36.     Based upon the facts set forth above, I respectfully request that this Court issue a warrant authorizing members of the ATF, or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a mobile tracking device in or on the target vehicle within the District of New Hampshire within ten (10) calendar days of the issuance of the requested warrant, and to

remove said tracking device from the target vehicle after the use of the tracking device has ended. I further request authorization to move the target vehicle to effect the installation, repair, replacement, and removal of the tracking device and to monitor the tracking device for a period of forty-five (45) days following the installation of the device, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of New Hampshire.

I declare that the foregoing is true and correct.

/s/ Eric Joyal
Eric Joyal
Task Force Officer, ATF

Subscribed and sworn to before me on February  28 , 2019.

Daniel J. Lynch
United States Magistrate Judge

14